**UNITED STATES of America,**

v.

**Edward Morris WEAVER, a/k/a Ned, Lawrence A. Kaplan, Scott M. Doumas, Mark Benowitz, Richard R. Goldberg, Richard Linick, Paul E. Raia, Howard S. Strauss, Wallace W. Direnzo, a/k/a Wally, James P. Ellis, a/k/a Max Braddock, a/k/a Patrick Cosgrove, a/k/a Todd Parker, Defendants.**

**No. 13–CR–120 (SJF)(AKT).**

United States District Court, E.D. New York.

Jan. 10, 2014.

---

Adrienne E. Fowler, Patrick Jasperse, U.S. Department of Justice, Washington, DC, for United States of America.

Matthew D. Umhofer, James W. Spertus, Spertus, Landes & Umhofer, LLP, Los Angeles, CA, Henry Eduardo Marines, Law Offices of Henry E. Marines, P.A., Silvia Pinera–Vazquez, Pinera–Vazquez Law Firm, Miami, FL, Vincent J. Martinelli, Attorney at Law, Staten Island, NY, Peter J. Tomao, Law Office of Peter J. Tomao, John F. Carman Garden City, NY, Nicholas Gregory Kaizer, Levitt & Kaizer, New York, NY, Francis X. Casale, Jr., Melville, NY, Jonathan H. Rosenthal, Malman, Malman & Rosenthal, Fort Lauderdale, FL, Terrence P. Buckley, Terrence P. Buckley, Esq., Commack, NY, Joseph R. Conway, Larusso & Conway, Mineola, NY, for Defendants.

## ORDER

FEUERSTEIN, District Judge:

The twelve (12) count superseding indictment, filed May 1, 2013 ("Indictment") charges defendants with various crimes in connection with their activities at Vendstar, a company that sold vending machine business opportunities. [Docket Entry No. 39]. The charges include conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, and substantive mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Jury selection and trial are scheduled as to all defendants[1] on September 29, 2014. [Docket Entry No. 72].

According to the government, since November 2012, it has produced the following discovery: (1) recordings made by cooperating witnesses, undercover federal investigators, and others; (2) documents from victims; (3) documents from cooperators and third parties; (4) hard copy documents seized during the execution of a search warrant on Vendstar's former business premises; (5) text-based and media files from the computer server imaged during the search; (6) complete forensic images of thirty-eight (38) computers seized during the search, along with all of the text-based files from these computers; and (7) Vendstar customer records stored by cloud provider NetSuite, United States' Opposition to Defendant Weaver's Motion for Identification of *Brady* Materials ("*Brady* Opp.") [Docket Entry No. 100], at 3–5. The majority of these documents were produced as searchable PDF files organized into categorized folders, and also as "load-ready" files that can be uploaded into a database and searched for keywords, phrases, and file types. *Id.* at 6. The government also provided "detailed

---

1. Defendant James Ellis pled guilty and has not yet been sentenced. [Docket Entry No. 67]. The remaining nine (9) defendants are scheduled for joint trial.

indices that describe, specify the source of and list the bates numbers of the materials." *Id.* at 7.

Now before the Court are defense motions seeking: (1) identification of *Brady* materials ("*Brady* Motion") [Docket Entry No. 82]; (2) production of documents in the possession of cooperators, government communications with cooperating witnesses, and rough notes of government agent interviews ("Motion to Compel") [Docket Entry No. 83]; (3) immediate disclosure of *Jencks* and *Giglio* material ("*Jencks/Giglio* Motion") [Docket Etnry No. 84]; [2] and (4) disclosure of government exhibits and identification of 404(b) material one hundred twenty (120) days before trial and production of a witness list two (2) months before trial ("Pretrial Motion") [Docket Entry Nos. 88, 90].[3] For the following reasons, these pretrial motions are granted in part and denied in part.

## I. Discussion

### A. *Brady* Motion

■ Defendants ask that the government be instructed "to conduct immediate review of all documents in its possession in this matter, and identify all *Brady* materials for all defendants." *Brady* Mot. at 1. For the following reasons, this motion is denied.

■ The Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "requires that the government disclose material evidence favorable to a criminal defendant." *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir.2012). "The government, however, need not provide *Brady* ... material im-

**2.** Defendant Weaver filed the *Brady* Motion, Motion to Compel, and *Jencks/Giglio* Motion. By letter dated December 20, 2013, the United States submitted a stipulated pretrial scheduling order ("Pretrial Scheduling Order"), which if granted by the Court, "would make moot all of the requests made in the defendants' pending motions regarding the timing of pretrial disclosures, except for defendant Weaver's request for an order requiring the government to disclose Giglio material immediately." [Docket Entry No. 110]. The Court has so ordered the Pretrial Scheduling Order. [Docket Entry No. 111]. Accordingly, the *Jencks/Giglio* Motion is now moot, except as to the *Giglio* requests, which are addressed in Section I(C)(2) of this opinion.

**3.** Defendants Benowitz, Kaplan, Doumas, Goldberg, and Strauss (the "Five Defendants") filed the Pretrial Motion. In Points One and Two of the Pretrial Motion, the Five Defendants move to strike portions of the Indictment (hereinafter "Motion to Strike"). Pretrial Mot. at 2–13. The Motion to Strike is addressed in a separate opinion. [Docket Entry No. 114]. Point Three of the Pretrial Motion, in which the Five Defendants request that the Court utilize a juror questionnaire, is addressed below in Section I(D)(2). The government's opposition to Point Three is includ-

ed with its response to the *Jencks/Giglio* Motion. United States' Response to Defendant Weaver's Motion for Early Disclosure of Jencks and Giglio Material and Defendant Benowitz, Kaplan, Doumas, Goldberg and Strauss' Motion Regarding the Timing of Disclosures ("*Jencks/Giglio* Opp."), at 18. Point Four of the Pretrial Motion, which addresses the timing of pretrial disclosures, is mooted by the Pretrial Scheduling Order.

In Point Five of the Pretrial Motion, the Five Defendants seek permission from the Court to file additional motions. Pretrial Mot. at 27. The Pretrial Scheduling Order requires *motions in limine* to be filed by August 7, 2014, oppositions be filed by August 28, 2014, and replies be filed by September 9, 2014. Pretrial Scheduling Order at 5–6. Any additional motions will be addressed upon filing.

Point Six of the Pretrial Motion, in which the Five Defendants seek to join the pretrial motions of their co-defendants, is granted. The Court previously granted Weaver's request to adopt the pretrial motions of his co-defendants. [Docket Entry No. 94]. Accordingly, Weaver and the Five Defendants (referred to hereafter as "defendants") have adopted each other's motions.

mediately." *United States v. Messina*, No. 11–CR–31, 2012 WL 463973, at \*12 (E.D.N.Y. Feb. 13, 2012). Instead, *"Brady* material must be disclosed in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir.2001). " 'While the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case.' " *United States v. Ohle*, No. 08 Cr. 1109, 2011 WL 651849, at \*4 (S.D.N.Y. Feb. 7, 2011) (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir.1990)), *aff'd*, 441 Fed.Appx. 798 (2d Cir.2011); *see also United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F.Supp.2d 451, 454 (S.D.N.Y.2011) (same). "As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir.2009), *aff'd in part and vacated on other grounds*, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010).

Defendants cite three (3) cases from other districts, in which the government was required to identify *Brady* material that it previously disclosed to the defendants. *See United States v. Salyer*, 271 F.R.D. 148, 155 (E.D.Cal.2010) ("[F]or documents already disclosed, the government shall specifically identify by Bate [sic] Stamp number or by specific title and location, the information which a reasonable prosecutor would view as exculpatory or impeaching."); *United States v. Hsia*, 24 F.Supp.2d 14, 29 (D.D.C.1998) ("The Government cannot meet its *Brady* obligations by providing [defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."); *United States v. Adan*, 10–CR–260, No. 607–1 at 21 (M.D.Tenn. May 10, 2011) ("The Court concludes that the Government's blanket provision here of 142 disks including disks unrelated to this action does not discharge its *Brady* and *Giglio* obligations.").[4] However, these cases lack precedential value in this district.

Furthermore, as the government correctly notes, those decisions are factually distinguishable from the instant case. *Brady* Opp. at 19–21. *See United States v. Salyer*, 2010 WL 3036444 (E.D.Cal. Aug. 2, 2010) (discovery produced by government to the sole defendant, who had been detained and unable to assist in reviewing documents, included a large amount of hard copy documents that could not be electronically text searched); *Hsia*, 24 F.Supp.2d at 28 (government produced 600,000 documents without an index to sole defendant); *Adan*, 10–CR–260, No. 607–1 at 21 (government produced 142 disks, with no additional information or index, which contained a "significant amount of information unrelated to this action"). Here, the government has provided detailed indices for all the materials it produced, the majority of which were provided in both PDF and "load-ready" file format that could be easily searched. *See Rubin/Chambers*, 825 F.Supp.2d at 457 (holding that "the Government has provided Defendants with access to all potential *Brady* material and has taken additional steps to facilitate Defendants' review of that material" where disclosures included "searchable electronic productions," "indices describing documents related to the Featured Transactions," and "indices of audio recordings"). Because the Government has satisfied its obligation pursuant to *Brady v. Maryland*, 373 U.S.

4. This unpublished opinion is attached to the *Brady* Motion as Exhibit G.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defendants' motion is denied.

### B. Motion to Compel

Defendants request that the Court order the government to produce "documents in the possession of any cooperators," "government communications with cooperating witnesses, including communications regarding immunity and cooperation agreements," and "rough notes of government agent interviews." Mot. to Compel at 1.

#### 1. Documents in the Possession of Cooperators

Defendants ask the Court to "order the government to produce any and all documents in the possession, custody, or control of cooperating witnesses that could aid [defendants] in preparing a defense." *Id.* at 8. According to the government, it "made a broad request" that each cooperating witness "provide the government with any materials in the witness' possession relevant to the investigation," and "provided the defense with everything cooperating witnesses provided in response." United States' Opposition to Motion to Compel Discovery ("Compel Opp."), at 3–4. Specifically, the government received materials from four (4) cooperating witnesses and the company operated by a fifth cooperating witness, which the government then provided or made available to defendants. *Id.* at 3. On November 18, 2013, the government received documents from a sixth cooperating witness, which have not yet been provided to the defendants. *Id.* at 3 n. 2. The government is directed to provide the documents from the sixth cooperating to the defendants by July 1, 2013.

██ Defendants contend that "documents in the possession, custody, or control of [a cooperating] witness are within the control of the government" because a cooperating witness "has a legal obligation to produce documents to the government on demand." Mot. to Compel at 7. To the extent that the cooperating witnesses withheld documents relevant to the investigation from the government in response to its request, the government is not required to produce such documents to defendants. *See United States v. Roldan–Zapata,* 916 F.2d 795, 807 (2d Cir.1990) ("A prosecutor is not required to turn over material that he neither possesses nor knows about."); *Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984) ("A prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness."); *United States v. Canniff,* 521 F.2d 565, 573 (2d Cir.1975) ("Cleary the government cannot be required to produce that which it does not control and never possessed or inspected."); *United States v. Hutcher,* 622 F.2d 1083, 1088 (2d Cir.1980) ("We reject ... a notion of 'possession' which is so elastic as to embrace materials that the prosecution never had in its files, never inspected, and never knew about."). While the government "is not aware of any additional relevant materials in the possession of the cooperating witnesses," it has agreed "to provide any additional materials produced by cooperating witnesses" to the defendants. Compel Opp. at 10. This is more than sufficient to satisfy the government's obligations under *Brady* and Rule 16 of the Federal Rules of Criminal Procedure. Accordingly, defendants' request that the Court order the government to produce any additional documents in the possession of cooperating witnesses is denied.

#### 2. Government Communications with Cooperating Witnesses

██ Defendants request that the government be required to produce "the oral

and written inducements, correspondence, negotiations, and proffers—both with the witnesses and the witness's counsel—that resulted in the witness's ultimate cooperation, as well as any changes in the witness's story along the way." Mot. to Compel at 8–9. The government has produced final plea agreements and proffer agreements with cooperating witnesses,[5] which memorialize "[a]ny benefits or favorable treatment the government has given cooperating witnesses." Compel Opp. at 14. The government argues that it "should not be required to disclose draft agreements or the negotiations with counsel that led to these agreements." *Id.* at 1.

As the government points out, the negotiations that resulted in a witness' cooperation were conducted between the government and counsel for the cooperating witness, and requiring production of the substance of such communications with counsel, and/or draft agreements, could have a chilling effect on plea negotiations. *Id.* at 1, 15; *see United States v. Valencia*, 826 F.2d 169, 173 (2d Cir.1987) ("A district court is entitled to consider whether trial use of informal attorney statements will lessen the prospects for plea negotiation or inhibit frank discussion between defense counsel and prosecutor on various topics that must be freely discussed in the interest of expediting trial preparation and the conduct of the trial."). Furthermore, the Court is satisfied that "[i]n the unlikely event that there is unanticipated testimony at trial from a cooperating witness that is somehow inconsistent with plea negotiation material, the government will produce the inconsistent statement then." Compel Opp. at 15. Accordingly, defendants' request that the Court require the government to produce plea negotiation material is denied.

### 3. Notes of Government Interviews

Defendants request that the government produce all notes of government interviews, including those of defendants and/or prospective government witnesses. Mot. to Compel at 10–12.

#### a. Defendant Interviews

■ Defendants argue that Rule 16(a)(1)(B)(ii) of the Federal Rules of Criminal Procedure requires the government to produce an agent's notes of interviews with defendants. The government interviewed Weaver, Kaplan, Goldberg, and DiRenzo, and disclosed the reports of those interviews to defendants. Compel Opp. at 16, 18 n. 5. While the circuit courts are split on whether notes of interviews with defendants must be produced in addition to interview memoranda,[6] this Court declines to order the government to pro-

---

5. The government has yet to produce twelve cooperation agreements filed in the Eastern District of New York ("E.D.N.Y."), seven of which were entered before Magistrate Judge Lindsay on November 19, 2013. Compel Opp. at 6–7 n. 4. The government is directed to serve these agreements on all defendants by July 1, 2014.

6. *Compare United States v. Merrill*, 685 F.3d 1002, 1013–14 (11th Cir.2012) (affirming district court's denial of motion to compel agents' notes of witness interview); *United States v. Brown*, 303 F.3d 582, 590 (5th Cir. 2002) ("The government satisfies its obligation under [Rule 16] when it discloses a 302 that contains all the information contained in the interview notes."); *United States v. Coe*, 220 F.3d 573, 583 (7th Cir.2000) (government not required to disclose rough notes of defendant interview where written report was adequate summation of handwritten notes, even where certain minor discrepancies existed between notes and report); *with United States v. Clark*, 385 F.3d 609, 619 (6th Cir.2004) ("[T]he government violated Rule 16 by failing to turn over [agent's] rough notes upon Defendant's request."); *United States v. Molina–Guevara*, 96 F.3d 698, 705 (3d Cir.1996) (production of agent's handwritten notes of interview with defendant was required by Rule 16).

duce the notes of interviews with Weaver, Kaplan, Goldberg, and DiRenzo. Instead, the government is directed to submit the notes of interviews with these defendants, as well as the interview reports, to the Court for *in camera* review by July 1, 2014. *See United States v. Koskerides,* 877 F.2d 1129, 1133 (2d Cir.1989) (court conducted *in camera* review of handwritten notes and concluded that "everything in the notes was contained in the memoranda"). If, upon comparison of the notes with the disclosed interview reports, the Court finds additional information in the notes, the government will be required to produce the original notes.

### b. Witness Interviews

Defendants argue that "the government must disclose to the defense any rough notes [taken by a government agent during a witness interview] that constitute *Brady* or *Giglio* material." Mot. to Compel at 12.[7] In its response, the government indicates that it will disclose any favorable information contained in interview reports or the underlying notes from interviews of those witnesses it does not expect to testify at trial. Compel Opp. at 21. The government is directed to pro-

duce such favorable information by July 31, 2014.

As for "prospective trial witnesses," the government plans to disclose interview reports to the extent they exist, but "does not intend to disclose the rough notes" "if the reports of interviews the government produces capture what the witness said during the interview." *Id.* at 21. However, if the notes contain material favorable information that is not incorporated into the final report, the government agrees to disclose such information to the defense by letter or by producing excerpts of the underlying notes. *Id.* at 20. The government is to produce interview reports and any additional favorable information contained in the notes from interviews with prospective trial witnesses by July 31, 2014.[8]

If no report was created for an interview with prospective trial witness, the government agrees to "summarize any information from [any] interview that the defendants do not already have." Compel Opp. at 21. The government did not, and was under no obligation to, prepare reports of its interviews with six (6) victims that the government intends to call as witnesses at trial. *See United States v. Rodriguez,* 496 F.3d 221, 224 (2d Cir.2007) (government

---

**7.** The *Jencks/Giglio* Motion includes a duplicative demand for the immediate production of "all rough notes of witness interview(s) taken or obtained in any investigation" of the defendants "whether or not the contents thereof have been incorporated in official records." *Jencks/Giglio* Mot. at 5(d). The Court considers these demands together.

**8.** The *Jencks/Giglio* Motion demands the immediate production of "[a]ny notes and memoranda made by government counsel during the interviewing of any witness intended to be called by the government in their direct case." *Jencks/Giglio* Mot. at 5(e). This case is distinguishable from *Goldberg v. United States,* the sole case cited in support of this request 425 U.S. 94, 98, 96 S.Ct. 1338, 47

L.Ed.2d 603 (1976) ("We hold that a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the Jencks Act."). Unlike in *Goldberg,* "[n]one of the notes taken by government counsel have been seen, signed or otherwise adopted or approved by potential government witnesses." *Jencks/Giglio* Opp. at 10. To the extent that government counsel's notes contain material information favorable to the defense or impeachment material not contained in the interview report prepared by the agent, the government is to .provide a summary of such information to defendants by July 31, 2014.

under no obligation "to take notes during witness interviews"). The Government is directed to produce summaries of information from the interviews of those six (6) witnesses that the defendants do not already possess by July 31, 2014.

■ To the extent that defendants seek production of *all* notes from interviews with government trial witnesses, the request is denied. The government correctly notes that it need not produce notes from interviews with government trial witnesses unless those notes "contain material favorable to the defense," are a "substantially verbatim recital" of the witness' statement, or have been reviewed or adopted by the witness. *See United States v. Artis*, 523 Fed.Appx. 98, 101 (2d Cir. Apr. 26, 2013) (summary order) (government need not disclose notes because "the notes were not shown to be 'signed or otherwise adopted or approved' by [witness] and are not a substantially verbatim recital of [witness'] words"); *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir.1995) (FBI notes may have been discoverable as a statement by the government witness only if "adopted or approved" as witness' own or if they are a "substantially verbatim recital" of witness' words). The government is directed to produce final reports of interviews of prospective trial witnesses, any undisclosed additional material information contained in the notes, and summaries of information from any interview that the defendants do not already possess. In all other respects, this branch of the motion is denied.

**C.** *Jencks/Giglio* Motion

**1.** *Jencks* Material

Defendants' request for *Jencks* material has been mooted by the Pretrial Scheduling Order, which provides that by July 31, 2014, the government will provide to defendants "any grand jury testimony, memoranda of interview and any other statements in the government's possession relevant to this matter not previously produced of witnesses the government might potentially call in its case-in-chief at trial." Pretrial Scheduling Order at 5. Defendants are to make reciprocal disclosures by September 29, 2014. *Id.*

**2.** *Giglio* Material

■ Defendants requests that the Court order the government to produce *Giglio* material immediately.[9] *Jencks/Giglio* Mot. at 4–5. However, the government "need not provide ... *Giglio* material immediately; instead ... *Giglio* material must be disclosed 'in time for its effective use at trial.'" *United States v. Messina*, No. 11–CR–31, 2012 WL 463973, at *12 (E.D.N.Y. Feb. 13, 2002) (quoting *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir.2001)).

The government has already produced NCIC records and the original plea agreements negotiated in the Southern District of Florida with the cooperating witnesses. *Jencks/Giglio* Opp. at 8. The government possesses, but has yet to produce, twelve (12) cooperation agreements filed in the E.D.N.Y., seven (7) of which were entered before Magistrate Judge Lindsay on November 19, 2013. *Jencks/Giglio* Opp. at 8.

**9.** Specifically, Weaver requests the immediate production of: (a) written statements signed, adopted, or approved by the witness; (b) any recording or transcription that is a "substantially verbatim recital" of a witness' oral statement made contemporaneously with the statement; (c) any statement made by the witness to a grand jury; (d) any rough notes of witness interviews, "whether or not the contents thereof have been incorporated in official records"; (e) notes and memoranda of government counsel made during any government witness interview; and (f) all surveillance reports, videos, and/or photographs made or adopted by a witness. *Jencks/Giglio* Mot. at 4–5.

The government must serve these agreements on all defendants by July 1, 2014. *See infra* at 7 n. 4.

The government states that it "is in the process of reviewing grand jury transcripts and memoranda of interviews and will disclose any impeachment material within those materials within the next several months." *Jencks/Giglio* Opp. at 9. Given that the trial is not scheduled to begin until September 29, 2014, the Court is satisfied that the government will produce these materials "in time for its effective use at trial." *Coppa,* 267 F.3d at 135. Accordingly, with the exception of the cooperation agreements filed in the E.D.N.Y., the Court declines to set a deadline for the government's production of *Giglio* material. *See United States v. Guerra,* No. 10–CR–147, 2012 WL 1899861, at *8 (E.D.N.Y. May 24, 2012) (denying defendant's request for production of *Giglio* materials 30 days before trial because the "government's assurances in its opposition papers satisfy the Court that the government has a firm grasp on its obligations under *Brady* and *Giglio* "); *Messina,* 2012 WL 463973, at *12 (denying defendant's request for production of *Giglio* material 30 days before trial because the "government has represented to the court that it is aware of and will comply with its ... *Giglio* obligations"); *United States v. Saliba,* No. 08–CR–792, 2010 WL 680986, at *4 (E.D.N.Y. Feb. 24, 2010) ("Given that the trial is over a month away, the court declines to order *Giglio* disclosure at this juncture.").

### 3. Government Witnesses

Defendants' request for the production of the government's witness list in advance of trial is mooted by the Pretrial Scheduling Order, which requires the government to provide the defendants with its witness list by July 31, 2014, and for defendants to disclose their potential witnesses by September 8, 2014. Pretrial Scheduling Order at 5.[10]

■ Defendants request "the opportunity to interview each and every witness intended to be called by the government immediately." *Jencks/Giglio* Mot. at 5. The two (2) cases cited by defendants involved requests for identification of government witnesses, and not pretrial defense interviews. *See United States v. Cannone,* 528 F.2d 296, 298 (2d Cir.1976) ("[W]e are not disposed to hold that the district court may never order the government to divulge names of prospective witnesses."); *United States v. Turkish,* 458 F.Supp. 874, 881–82 (S.D.N.Y.1978) ("Defendants seek a list of the names and addresses of those people whom the government intends to call as witnesses at trial."). The motion is denied insofar as it seeks an opportunity to interview the government witnesses. *See United States v. Palermo,* No. 99 CR. 1199, 2001 WL 185132, at *3 n. 4 (S.D.N.Y. Feb. 26, 2001) ("[T]he Court has not been made aware of any authority for the proposition that the government must make all of its witnesses available for pretrial interview.").

### D. Additional Defense Requests

#### 1. Disclosure

The Pretrial Scheduling Order directs the government to provide its exhibit list and to identify recordings it intends to

---

**10.** The Pretrial Scheduling Order directs the government to "identify any expert witnesses it intends to call in its case-in-chief" and to provide "a written summary of any such testimony" by June 6, 2014, and directs defendants to do the same by July 18, 2014. Pretrial Scheduling Order at 3. Both parties are to "identify any rebuttal expert witnesses they intend to call" and "provide the other parties with a written summary of any such testimony" by August 28, 2014, *Id.*

play at trial, including specific excerpts, by June 6, 2014, and requires defendants to make reciprocal disclosures by July 18, 2014. Pretrial Scheduling Order at 3–4. Additionally, the government must notify defendants by July 1, 2014 of any 404(b) evidence it might introduce beyond what the government previously identified in the notice filed in the Southern District of Florida on November 6, 2012. *Id.* at 4. Therefore, defendants' requests are moot.

### 2. Use of Juror Questionnaire

 Defendants "request that the Court require prospective jurors to complete a questionnaire to be prepared by the defense and the government." Pretrial Mot. at 16. The Court has "ample discretion in determining how best to conduct the *voir dire.*" *Rosales–Lopez v. United States*, 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981). While "the use of questionnaires [is] one of many tools available for voir dire," district judges are not "obligated to make use of this procedure in selecting juries." *United States v. Treacy*, 639 F.3d 32, 46 (2d Cir.2011) (quotation marks and citation omitted). The Court will conduct *voir dire* and declines to require prospective jurors to complete a written questionnaire. *See United States v. Salameh*, 152 F.3d 88, 121 (2d Cir.1998) (finding district court did not abuse its discretion in declining to use prospective juror questionnaire); *United States v. Watts*, 934 F.Supp.2d 451, 494 (E.D.N.Y. 2013) (denying defendant's "request that jury venire be given a written questionnaire" in light of "court's practice of asking questions orally" and "the court's discretion to modify the exact wording of [defen-dant's] proposed questions as it deems appropriate"). However, the parties may submit proposed *voir dire* questions for the Court's consideration by July 11, 2014, as set forth in the Pretrial Scheduling Order.[11] Pretrial Scheduling Order at 2–3.

## II. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the defendants' pretrial motions and requests.

**SO ORDERED.**

---

11. With respect to jury instructions, the Pretrial Scheduling Order requires that: (1) by May 9, 2014, the government provide defendants with proposed jury instructions; (2) by June 18, 2014, defendants jointly provide proposed revisions; (3) by July 2, 2014, the government advise the defendants as to which revisions it agrees and objects; and (4) by July 11, 2014, the government submit to the Court a package including the jointly proposed jury instructions, and the proposed instructions by each side to which the other objects. Pretrial Scheduling Order at 1–2.